UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Christopher Whiles and ) | |
| Lisa Whiles, as Assignees of ) | |
| Amy M.Ortiz f/k/a Amy M. Sears, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 3:04cv134AS |
| ) | |
| Allstate Insurance Compnay, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM , ORDER & OPINION**

This matter is before the Court on a Motion for Summary Judgment brought by defendant Allstate Insurance Company ("Allstate" or "Defendant") against plaintiffs Christopher Whiles and Lisa Whiles (collectively "the Whiles" or "Plaintiffs"). Plaintiffs allege breach of contract and bad faith by Allstate. The Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a) and Indiana law governs the substantive issues. Oral arguments in this matter were heard on August 4, 2005 and the parties have fully briefed the issues.

**I. Background**

Plaintiff Christopher Whiles was injured in an automobile collision with another vehicle driven by Amy Sears (now known as "Amy M. Ortiz"). Defendant's Answer to Plaintiffs' Complaint ¶ 5. At the time of the incident, Sears had a policy of automobile insurance purchased from and issued by Allstate. The policy contained bodily injury liability coverage with limits of $50,000.00 and property damage liability coverage with limits of $100,000.00. (Complaint, ¶ 8 at 2, Defendant's Exhibit A/A, Answer, ¶ 8, Defendant's Exhibit B).

The bodily damage that occurred as a result of the incident greatly exceeded the

$50,000.00 policy limits.

The property damage to Plaintiffs' truck was significantly below the limits of property damage coverage available to Amy Sears under the Allstate Policy. (Answer, ¶¶ 8, 10, Defendant's Exhibit B). Allstate used a personal inspection and a software program manufactured by CCC Information Services, Inc. to calculate the value of Plaintiffs' truck. Allstate determined that the truck was worth $1,728.00. (Affidavit of David Arch).

Plaintiffs, on the other hand, used Blue Book and NADA valuations and determined that the truck had a value of $2,500.00. They then offered to settle the property damage claim for that amount in a June 13, 2000 letter. (Complaint, ¶ 10 at 3). In response, Allstate offered $1,831.15 to settle the property damage claim. (Answer, ¶ 10).

The Plaintiffs, by letter from their counsel, rejected Allstate's property damage offer. Plaintiffs' counsel also stated that a rejection of Plaintiffs' $2500.00 property damage settlement offer would lead to a refusal by plaintiffs to accept Allstate's bodily injury limits of $50,000.00 in settlement of the bodily injury claims. (Complaint, ¶ 12 at 3).

On December 8, 2003, the plaintiffs and Amy Ortiz, formerly known as Amy Sears, entered into an Assignment of Rights and Covenant Not to Execute by which Amy Ortiz assigned to plaintiffs any and all claims that she may gave against Allstate for its failure to settle the claims made by the plaintiffs against her prior to the entry of judgment by the Lake Superiro Court. (Answer, ¶ 16, Defendant's Exhibit B). On December 19, 2003, the Lake Superior Court entered a consent judgment in favor of the plaintiffs and against Amy Ortiz in the amount of $303,200.00. (Answer, ¶ 15, Defendant's Exhibit B). This lawsuit was filed on February 17, 2004.

## II.  Summary Judgment Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998).  *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor.  *Celotex*, 477 U.S. at 324  (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998).  A question of material fact is a question which will be outcome determinative of an issue in the case.  The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue.  *Anderson*, 477 U.S. at 248.  Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'"  *Id.*  The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994);  nor may that party rely upon conclusory allegations in affidavits.  *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55.

Summary Judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (citations omitted).

### III.  Discussion

#### A.  Motions to Strike

As a preliminary matter, the Court must address Defendant's Motion to Strike the Affidavit of Sam Kovacevich and Plaintiffs' Supplemental Response.

Defendant asks that this Court strike the affidavit of Sam Kovacevich, which was offered as exhibit 5 to Plaintiffs' Response to Allstate's Motion for Summary Judgment. As that witness was not timely disclosed, his affidavit must be stricken.

Additionally, Defendant asks that this Court strike Plaintiffs' Supplemental Response, which was filed after Defendant had filed its Summary Judgment reply brief. As Plaintiffs did not obtain leave of the Court to file a supplemental response, that response must be stricken. Defendant's Motion to Strike is therefore granted in its entirety.

#### B.  Breach of Contract

Plaintiffs claim that Allstate breached its contract with the insured when it refused to

4

settle the property damage claim for $2500.00, the amount requested by Plaintiffs during settlement negotiations.

Indiana Courts use the "four corners" approach in interpreting contracts.  *See Evans v. Med. & Prof'l Collection*, 741 N.E.2d 795, 797-98 (Ind. Ct. App. 2001).  Interpretation of terms in an insurance policy is a question of state contract law.  *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir. 1996) (citing *Tate v. Secura Ins. Group v. Sear Corp.*, 587 N.E.2d 665, 668 (Ind. 1992)).  A question of fact as to interpretation of insurance policies exists only when extrinsic evidence is required to resolve an ambiguity.  *See Tate*, 587 N.E.2d at 668.

The key provisions of the contract in dispute state that "Allstate will pay damages which an insured person is legally obligated to pay because of . . . damage to or destruction of, property including loss of use;" and "We [Allstate] will defend an insured person sued as a result of a covered accident involving an insured auto . . . We may settle any claim or suit if we believe it is proper." (Defendant's Motion for Summary Judgment, Exhibit F, p. 6 General Statement of Coverage).

The plain language of the contract clearly gives Allstate discretion in deciding the whether to settle a claim.  In other words, it clearly had a right to reject what it felt to be an erroneous calculation of the property damages involved in this dispute.  Allstate cannot breach the contract for exercising its explicitly outlined contractual rights.  Therefore, Plaintiffs breach of contract claim must be dismissed.

### C.  Bad Faith

Plaintiffs claim that Allstate failed to negotiate the settlement of Amy Sears' claim in good faith under Indiana law.  More specifically, they claim that by offering $1,831.15 for the

property damage claim and rejecting Plaintiffs' offer to settle the property damage claim for $2,500, Allstate attempted to "low ball" Plaintiffs.  According to Plaintiffs, this offer and rejection, along with the Allstate's conduct during the negotiation, amounted to bad faith.

Indiana recognizes a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith.  *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993).  That duty includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement." *Id*.  However, the Indiana Supreme Court stated:

> A good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of an obligation to exercise good faith.  This is so even if it is ultimately determined that the insurer breached its contract.  That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana.

*Id*. at 520.  The Court in *Erie* further noted that "an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty.  *Id*.

It takes more than a dislike of the settlement tactics of this insurance company to make a claim against it under the law of Indiana.  Basically, that dislike is at the very heart of these Plaintiffs' arguments.  The Indiana Supreme Court has recognized the right of insurance companies to dispute the amount of a claim, and there is nothing in the record of this case from which a jury could reasonably find bad faith on the part of Allstate.  Allstate's subsequent offer of $2,500 does not in any way indicate deception, dishonesty or other form of misconduct.  Their use of CCC Information Services, a service recognized by Indiana Statute as a proper method for

6

calculating the fair-market value of an automobile,[1] also does not amount to bad faith. Instead, it shows that Allstate clearly had a rational, principled basis for its position during negotiations. Even if Allstate's calculations were erroneous or not as accurate as those offered by the Plaintiffs, Allstate's reliance on them would not reasonably justify a finding of good faith. To hold otherwise would be to ignore the fundamental nature of settlement negotiations. Each adverse party has the right to stand firm and advance its interests during the negotiations. Clearly, the Plaintiffs here felt justified in refusing to accept Allstate's terms. As the Indiana Court of Appeals stated in *State v. Carter*, 658 N.E.2d 618, 623 (Ind. Ct. App. 1995), "Carter offers no explanation as to why her refusal to settle on the State's terms is less culpable then the State's refusal to settle on her terms." The Plaintiffs have failed in the same regard here. Therefore, Plaintiffs' claims on this Count must be dismissed.

### D. Unfair Claims Settlement Practices Act

Count II of Plaintiffs' Complaint alleges that Allstate is liable for violations of I.C. § 27-4-1-4.5, the Unfair Claims Settlement Practices Act. That act does not create a private cause of action by individuals against an insurance company. I.C. § 27-4-1-18. *See Guarantee Trust Life Ins. Co. v. Palsce*, 641 N.E.2d 266 (Ind. Ct. App. 1994). Plaintiffs, in their response to the Motion for Summary Judgment, concede that Count II of their Complaint should be dismissed.

---

[1] See Ind. Code § 9-22-3-2 (2000).

**IV. Conclusion**

Based on the foregoing analysis, Defendant's motion for summary judgment is **GRANTED**.  The Defendant's Motion to Strike the Affidavit of Sam Kovacevich and Plaintiffs' Supplemental Response is **GRANTED**.

**SO ORDERED**.

Date: September 9, 2005 　　　　　　　　　　　　　　S/ ALLEN SHARP
　　　　　　　　　　　　　　　　　　　　　　　　　　**ALLEN SHARP, JUDGE**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**